IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| R. Andrew Ketner and Stephen Baker, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>Branch Banking and Trust Company,<br><br>Defendant. | **COMPLAINT**<br><br>Case No. 1:14-cv-967 |

Plaintiffs R. Andrew Ketner ("Ketner") and Stephen Baker ("Baker"), (collectively "Plaintiffs"), on their own behalf and on behalf of all similarly situated employees, bring this collective action against Defendant Branch Banking and Trust Company ("BB&T" or "Defendant") for damages and other relief relating to violations of the Fair Labor Standards Act ("FLSA").

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case is brought under the FLSA, 29 U.S.C. § 201 *et seq*.

2. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in the United States District Court, Middle District of North Carolina pursuant to 28 U.S.C. § 1391, because Defendant BB&T's headquarters and principal office is in Winston-Salem, North Carolina, Defendant

1

resides and operates in this district, and a substantial part of the events giving rise to the claims occurred in this district.

**THE PARTIES**

4. Defendant BB&T is a North Carolina corporation doing business in and maintaining offices in several states throughout the United States. Defendant BB&T's headquarters and principal place of business is located in Winston-Salem, North Carolina.

5. According to its website, BB&T provides financial services to its customers, including personal banking, insurance, home mortgages, investment services, retirement plans, and wealth advisory services.

6. At all relevant times, BB&T has been an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203(d). Specifically, BB&T provides financial services to customers in several states throughout the United States. BB&T's gross annual sales made or business done has been in excess of $500,000.00 at all relevant times.

7. Plaintiff Ketner is an adult individual residing in the State of New York. He was employed by Defendant from approximately July 2012 through August 12, 2013 in Defendant's Winston-Salem, North Carolina office. Plaintiff Ketner attended and graduated from BB&T's management-training program known as the Leadership Development Program ("LDP") and was subsequently

placed in Defendant's Winston-Salem office as a Business Process and Project Improvement Analyst. Plaintiff Ketner's annual salary was $46,000.

8.  Plaintiff Baker is an adult individual residing in Winston-Salem, North Carolina. He was employed by Defendant from approximately July 2012 through July 2014 in Defendant's Winston-Salem, North Carolina office. Plaintiff Baker attended and graduated from the LDP and was subsequently placed in Defendant's Winston-Salem office as a Research & Strategy Specialist I in Defendant's Enterprise Vendor Management operation. Plaintiff Baker's annual salary was $100,000.

9.  Plaintiffs have consented in writing to assert claims for overtime and minimum wage under the FLSA. (See Ex. A). As this case proceeds, it is likely that other individuals will sign consent forms and join this action as opt-in plaintiffs.

## COLLECTIVE ACTION FACTUAL ALLEGATIONS

### The Leadership Development Program

10. Plaintiffs and similarly situated individuals were hired as trainees and enrolled in the LDP.

11. Defendant administers the LDP at "BB&T University," a facility located in Winston-Salem North Carolina.

12. Defendant recruits numerous recent college graduates to participate in the LDP. Defendant provides two LDP classes per year. Each LDP class consists of approximately 40-50 recent college graduates.

13. Defendant also recruited individuals who attained a Master's in Business Administration (MBA) to participate in the LDP through what was called the "Top MBA Program." Only MBA graduates with significant work experience were recruited for this program. Defendant recruited approximately 10 MBA graduates each year to join the LDP through the Top MBA Program.

14. MBA graduates participated in the LDP and received the same training offered to recent college graduates.

15. Upon information and belief, the duration of the LDP varied over time. Some programs were scheduled for six months duration; others were ten months duration.

16. New hires assigned to the LDP, including both recent college graduates and MBA graduates (collectively "LDP Trainees"), are placed in one of three career tracks: 1) Corporate track, 2) Business track, and 3) Business-Corporate. LDP Trainees are typically assigned job titles reflecting their career-track assignment, such as "Leadership Associate-Corporate" or "Leadership Associate – Business."

17. Plaintiff Ketner was assigned to the LDP in July, 2012 and placed in the Corporate track.

18. Plaintiff Baker was assigned to the LDP in July, 2012 and placed in the Business-Corporate track.

19. During their employment in the LDP, Plaintiffs and similarly situated LDP Trainees were hourly-paid, non-exempt employees eligible for overtime pay within the meaning of the FLSA.

### The Training Cost Agreement

20. As a condition of employment, BB&T requires all LDP Trainees to execute a one-page document entitled LDP Training Cost Agreement (the "TCA"). (See Ex. B).

21. The TCA obligates LDP Trainees to pay BB&T "Training Costs" in the event they terminate their employment within five (5) years of going to work for BB&T. Specifically, the TCA states: "Associate agrees to repay BB&T the Training Cost if within sixty (60) months of Associate's first day of employment as an Associate, either Associate terminates employment with BB&T for any reason, or Associate's employment is terminated by BB&T for Just Cause."

22. Plaintiffs Ketner, Baker, and others similarly situated, signed the TCA.

### Failure to Pay Overtime to LDP Trainees

23. LDP Trainees were required to, among other things, pass examinations, attend scheduled classes, and participate in training events in order to remain in the LDP. The time spent on these work activities exceeded forty (40) hours per week.

5

24. Defendant posted monthly schedules of events and assignments for LDP Trainees. These schedules included limitations on the amount of overtime that would be paid on a weekly basis. In many weeks, the schedule permitted zero hours of paid overtime.

25. Supervisors in the LDP routinely criticized LDP Trainees for working overtime as part of a practice of trying to discourage LDP Trainees from reporting all of the time they worked.

26. In response to the pressure from supervisors, Plaintiffs and other similarly situated LDP Trainees underreported all the overtime hours they spent on work activities while in the LDP.

27. For the recorded overtime hours that LDP Trainees were paid, Defendant used an incorrect overtime rate in paying its LDP Trainees.

28. Defendant knew or should have known that LDP Trainees were working unpaid overtime hours.

**Failure to Pay Overtime to LDP Graduates**

29. In November 2012, while still considered to be in the LDP, Ketner was assigned to Defendant's Enterprise Vendor Management department and placed in a job called "Business Process and Project Improvement Analyst."

30. On or about March 8, 2013, Ketner, Baker, and their classmates from the July 2012 LDP class graduated from the LDP.

6

31.     Like other LDP Trainees who have graduated from the LDP, Defendant transferred Plaintiffs and their classmates (collectively "LDP Graduates") to cost centers associated with their new job assignments.

32.     After graduating from LDP, Ketner continued as a Business Process and Project Improvement Analyst, with no material change in his primary job responsibilities. He continued to work overtime on a regular basis, and received no overtime compensation for his overtime hours.

33.     Upon graduating from the LDP, Baker was assigned to Defendant's Enterprise Vendor Management department, and placed in the position of a "Research & Strategy Specialist I." Baker continued to work overtime on a regular basis, and received no overtime compensation for overtime hours.

34.     After graduating from LDP, Plaintiffs and other LDP Graduates were paid a salary and were misclassified as ineligible for overtime pay.

35.     Defendant has a standard practice of assigning LDP Graduates to positions that are not properly classified as exempt and suffering and permitting them to work more than forty hours per week without overtime compensation for all overtime hours worked.

36.     Defendant was aware, or should have been aware, that Plaintiffs and other similarly situated LDP Graduates performed non-exempt work that required payment of overtime compensation, and that LDP Graduates were working unpaid overtime hours. For instance, Defendant knew that certain LDP Graduates were

7

required to complete month-end book closing processes, which required employees to be in the office late hours and on weekends.

### Enforcing the TCA – Minimum Wage and Overtime Pay

37. Plaintiff Ketner terminated his employment with BB&T on August 12, 2013. Plaintiff Baker terminated his employment with BB&T in July, 2014.

38. After Plaintiffs Ketner and Baker terminated their employment, BB&T advised them that it intended to enforce the TCA.

39. BB&T has retained a law firm to collect the balance it asserts is due from Plaintiffs Ketner and Baker under the TCA. The law firm has demanded payment and asserted that it will take legal action to enforce the TCA and seek court costs, interest and attorney fees. A copy of the demand letters from the law firm are attached as Exhibit C.

40. BB&T demanded payment from Plaintiff Ketner in the amount of $35,982.92.

41. BB&T demanded payment from Plaintiff Baker in the amount of $27,800.00.

42. BB&T demanded payment from former LDP Trainees Jillian Forbes and Thomas Beamon. Ms. Forbes and Mr. Beamon repaid a portion of the amount demanded by BB&T.

43. Defendant has an actual practice of enforcing, and threatening to and seeking to enforce the TCA. In so doing, BB&T has improperly recovered and

seeks to improperly recover wages earned by LDP Graduates who are terminated within five years of being hired by Defendant.

44. BB&T has enforced the TCA and has recovered money from LDP Graduates that has resulted in those individuals earning less than the minimum wage required by the FLSA.

45. BB&T's actual practice of enforcing the TCA is an improper deduction under the FLSA and violates the FLSA's requirement that an employee receive his or her wages unconditionally or "free and clear."

46. BB&T's actual practice of enforcing the TCA, and clear policy of threatening to enforce the TCA, has resulted in LDP Graduates being improperly classified as exempt from overtime pay from the time they graduated from the LDP to the end of their employment, or the 5-year TCA provision (whichever comes first). During the relevant time period, LDP Graduates are not paid on a fixed salary basis as required to be exempt from the FLSA's overtime protections.

## CAUSES OF ACTION

### Count I - Violation of the FLSA
### Failure to Pay Proper Overtime to the LDP Trainees

*On Behalf of Plaintiffs and the LDP Trainee Overtime Class*

47. Plaintiffs seek to bring this claim under 29 U.S.C. § 216(b) on behalf of themselves and similarly situated employees. The proposed LDP Trainee Overtime Class is defined as:

> All persons who are, have been, or will be employed by BB&T at any time within three years of this

9

action's filing date, who were enrolled in a management training program operated by Defendant known as the Leadership Development Program ("LDP").

48. The FLSA, 29 U.S.C. § 207 requires employers to pay all non-exempt employees one and one-half times the regular rate of pay for all ours worked over forty (40) per week.

49. Plaintiffs and the LDP Trainee Overtime Class work(ed) in excess of forty (40) hours per week, but did not receive the appropriate overtime compensation from Defendant.

50. Defendant failed to accurately record actual hours worked by Plaintiffs and the LDP Trainee Overtime Class.

51. Defendant miscalculated Plaintiffs and the LDP Trainee Overtime Class' hourly overtime rates, and failed to pay the legally-required time-and-a-half rate for overtime hours.

52. By failing to pay proper overtime compensation, Defendant violated the FLSA.

53. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

54. As the direct and proximate cause of Defendant's unlawful conduct, Plaintiffs and the LDP Trainee Overtime Class have suffered a loss of wages and other damages. Plaintiff and the LDP Trainee Overtime Class are entitled to

10

liquidated damages, attorneys' fees, and costs incurred in connection with this claim.

**Count II - Violation of the FLSA**
**Misclassification of LDP Graduates as Exempt from Overtime**

*On Behalf of Plaintiffs and the LDP Graduate Overtime Class*

55. Plaintiffs seek to bring this claim under 29 U.S.C. § 216(b) on behalf of themselves and similarly situated employees. The proposed LDP Graduate Overtime Class is defined as:

> All persons who were employed by Defendant BB&T at any time within three years prior to this action's filing date who signed BB&T's Training Cost Agreement and graduated from BB&T's LDP program.

56. Plaintiffs and members of the LDP Graduate Overtime Class were classified as exempt from FLSA wage and hour protections after graduating from the LDP. Plaintiffs and those similarly situated LDP Graduate Overtime Class routinely worked in excess of eight (8) hours per day and forty (40) hours per week for Defendant without receiving proper overtime pay.

57. Plaintiff and members of the LDP Graduate Overtime Class were required, as a condition of employment, to sign the TCA. The TCA requires payment of BB&T's "Training Costs" if an employee terminates his or her employment before five (5) years' time.

58. Pursuant to the requirements of the FLSA, see 29 C.F.R. § 541.602(a), BB&T was required to pay Plaintiff and the LDP Graduate Overtime

11

59. BB&T paid Plaintiffs and the LDP Graduate Overtime Class a salary and subjected them to an actual practice and clear policy of requiring Plaintiffs and the LDP Graduate Overtime Class to pay back "Training Costs" up to $46,000 if their employment terminated within five years.

60. Defendant's failure to pay Plaintiffs and the LDP Graduate Overtime Class on a predetermined salary basis rendered LDP Graduates non-exempt employees. Defendant's classification of LDP Graduates as exempt employees from graduating LDP to the end of the 5-year TCA provision, and its failure to pay overtime compensation to these employees, is a violation of the FLSA.

61. Additionally, Defendant misrepresented to Plaintiffs and other LDP Graduates that they were ineligible to receive overtime pay. In reality, Plaintiffs and other the similarly situated LDP Graduates were placed in job positions after the LDP that did not require them to exercise discretion and independent judgment with respect to matters of significance. Plaintiffs and the LDP Graduate Overtime Class were assigned to clerical-type positions, in which they were heavily supervised.

62. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

63. As the direct and proximate cause of Defendant's unlawful conduct, Plaintiffs and the LDP Graduate Overtime Class have suffered a loss of wages and

12

other damages. Plaintiff and the LDP Graduate Overtime Class are entitled to liquidated damages, attorneys' fees, and costs incurred in connection with this claim.

## Count III
## Violation of the FLSA's Minimum Wage Requirement

*On Behalf of Plaintiff Ketner and the LDP Minimum Wage Class*

64. Plaintiff Ketner seeks to bring this claim under 29 U.S.C. § 216(b) on behalf of himself and similarly situated employees. The proposed LDP Minimum Wage Class is defined as:

> All persons who were employed by Defendant BB&T at any time within three years prior to this action's filing date who terminated their employment with BB&T and against whom Defendant enforced the Training Cost Agreement.

65. The FLSA generally requires that employees receive wages of not less than $7.25 per hour. 29 U.S.C. § 206.

66. BB&T required Plaintiff and all those similarly situated to sign the TCA. Under the terms of the TCA, Plaintiff's and the LDP Minimum Wage Class' wages were conditionally paid, subject to reductions, and not "free and clear" as required by law. Enforcement of the TCA violates the FLSA to the extent it has the effect of requiring employees of Defendant to work for wages that are lower than the minimum wage required by 29 U.S.C. § 206.

67. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

13

68. As the direct and proximate cause of Defendant's unlawful conduct, Plaintiff Ketner and other similarly situated LDP Minimum Wage Class members have suffered a loss of wages and other damages. Plaintiff and LDP Minimum Wage Class are entitled to liquidated damages, attorneys' fees, and costs incurred in connection with this claim.

## **Count IV - Violation of the FLSA**
## **Declaratory Judgment Regarding**
## **Enforcement of the Unlawful Provision in the TCA**

*On Behalf of Plaintiffs and Other LDP Trainees and Graduates*

69. Plaintiffs on behalf of themselves and other similarly situated LDP Trainees and Graduates, reallege and incorporate the above paragraphs by reference as though fully stated herein as part of Count IV of this Complaint.

70. Plaintiffs and others similarly situated were required, as a condition of employment, to sign the TCA.

71. Defendant has enforced the TCA against its employees. BB&T has retained a law firm to collect the balance it asserts is due from Plaintiffs under the TCA. The law firm has demanded payment and asserted that it will take legal action to enforce the TCA and seek court costs, interest, and attorney fees. (See Ex. C).

72. Enforcement of the TCA violates the FLSA to the extent it has the effect of requiring LDP Trainees and/or Graduates to work for wages that violate minimum wage and overtime laws specified in the FLSA.

14

73. Defendant has threatened to enforce the TCA against Plaintiffs Ketner and Baker.

74. Defendant's conduct is willful.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs R. Andrew Ketner, Stephen Baker, and all others similarly situated respectfully request the following relief:

a. Designation of this action as a collective action on behalf of the LDP Trainee Overtime Class and LDP Graduate Overtime Class, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b);

b. Judgment against Defendant for the payment of unpaid wages and unpaid back wages at the applicable overtime rates;

c. Judgment that Defendant's violations as described above were willful;

d. Judgment that Defendant failed to maintain accurate time records of all the hours worked by Plaintiffs in violation of the FLSA;

e. An award to Plaintiffs and those similarly situated for the amount of unpaid wages owed, liquidated damages and penalties where provided by law, and interest thereon, subject to proof at trial;

f. An award of attorneys' fees, costs and disbursements, as provided by law;

g. An award of prejudgment interest to the extent liquidated damages are not awarded;

h. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

i. Declaratory judgment that Defendant's TCA is unenforceable as it violates overtime and minimum wage provisions of the FLSA;

j. Declaratory judgment that Defendant's conduct, policies and practices are unlawful and violate the Fair Labor Standards Act; and

k. All further relief as the Court deems just and equitable.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: November 17, 2014    s/Robert A. Brinson
Robert A. Brinson, N.C.S.B. #7020
ROBERSON HAWORTH & REESE, P.L.L.C.
300 North Main Street, Suite 300
P.O. Box 1550
High Point, NC  27261
Telephone:  (336) 889-8733
Facsimile:  (336) 885-1280
bbrinson@rhrlaw.com

Rachhana T. Srey, MN Bar No. 340113*
Brittany B. Skemp, MN Bar No. 0395227*
NICHOLS KASTER, PLLP
4600 IDS Center, 80 South 8th St.
Minneapolis, MN 55402
Telephone: 612-256-3200
Fax: 612-215-6870
*Pro hac vice application forthcoming

ATTORNEYS FOR PLAINTIFFS AND
SIMILARLY SITUATED EMPLOYEES

16