IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA
CASE NO.: 1:14-cv-967-LCB-LPA

| | |
|---|---|
| R. Andrew Ketner and Stephen Baker, individually and on behalf of all other similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>Branch Banking and Trust Company,<br><br>    Defendant. | **MEMORANDUM IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS** |

Plaintiffs R. Andrew Ketner and Stephen Baker filed this putative collective action against their former employer Branch Banking and Trust Company ("BB&T") under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

The Complaint contains four causes of action: (1) Count I, alleging on behalf of the named plaintiffs and those similarly situated that BB&T violated the FLSA by failing to properly pay the named plaintiffs and other associates participating in BB&T's Leadership Development Program ("LDP") for all overtime hours worked; (2) Count II, alleging on behalf of the named plaintiffs and those similarly situated that, after the plaintiffs and other LDP associates graduated from the Program and assumed various job positions throughout BB&T, BB&T misclassified them as exempt from the FLSA's overtime and minimum wage requirements; (3) Count III, alleging on behalf of the plaintiff Ketner and those similarly situated, that BB&T violated the FLSA's requirement that non-exempt employees be paid the required minimum wage and overtime "free and clear" of impermissible deductions; and (4) Count IV, seeking a declaratory judgment on

behalf of the named plaintiffs and those similarly situated that the Training Cost Agreement entered into between BB&T and the named plaintiffs and other LDP associates violates the FLSA's minimum wage and overtime provisions and is therefore unenforceable.

This matter is before the Court upon Defendant's Partial Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons described below, the plaintiffs have failed to state claims against BB&T under Counts II, III and IV upon which relief may be granted by this Court. Consequently, the Court should dismiss these claims, with prejudice. Fed. R. Civ. P. 12(b)(6).

## **STATEMENT OF THE CASE/FACTS**

For purposes of this Motion to Dismiss, BB&T sets out the pertinent facts as alleged by the plaintiffs in the Complaint. BB&T provides financial services—including personal banking, insurance, home mortgages, investment services, retirement plans, and wealth advisory services—to its customers. Doc. 1 at ¶ 5. Ketner was employed by BB&T from July 2012 until he voluntarily resigned in August 2013. Doc. 1 at ¶¶ 7, 37. Ketner's annual salary throughout his employment with BB&T was $46,000. Doc. 1 at ¶ 7. Baker was employed by BB&T from July 2012 until he voluntarily resigned in July 2014. Doc. 1 at ¶¶ 8, 37. Baker's annual salary while employed with BB&T was $100,000. Doc. 1 at ¶ 8.

BB&T offers certain job candidates the opportunity to participate in a management training program known as the Leadership Development Program ("LDP" or the "Program"). Doc. 1 at ¶¶ 7, 10-16. Ketner and Baker participated in the LDP class

beginning in July 2012. Doc. 1 at ¶¶ 17-18. During the LDP, the named plaintiffs and other LDP associates were paid on an hourly basis and treated as non-exempt employees entitled to overtime pay within the meaning of the FLSA. Doc. 1 at ¶ 19.

As a condition of their employment and entrance into the LDP program, BB&T required LDP participants to enter into a contract entitled "LDP Training Cost Agreement" ("TCA" or the "Agreement"), a copy of which is attached to the Complaint. Doc. 1 at ¶ 20, Ex. B. Both Ketner and Baker signed the Agreement. Doc. 1 at ¶ 22. The TCA states that the LDP is designed to provide associates with financial services skills and expertise that they did not possess upon entering the program. Doc. 1, Ex. B. The Agreement further provides that BB&T will invest considerable time and money in the associate while participating in the LDP and that these training costs are calculated at $46,000 per associate. Id.

By signing the TCA, the named plaintiffs agreed to repay BB&T the training costs if, within sixty (60) months (or five years) of the associate's first day of employment at BB&T, the associate either terminates employment with BB&T for any reason or is terminated by BB&T for just cause, as defined in the Agreement. Id. The Agreement provides that one-sixtieth (1/60th) of the training costs will be forgiven for each full month of the associate's employment with BB&T. Id. The plaintiffs further agreed, by entering into the TCA, to repay any remaining balance of the amount due within thirty (30) days of their last day of employment at BB&T. Id.

In November 2012, while still participating in the LDP, Ketner was placed in a Business Process and Project Improvement Analyst position, and he continued in that

role after he graduated from the LDP in March 2013. Doc. 1 at ¶¶ 7, 29-32. Baker, on the other hand, assumed a Research and Strategy Specialist I position after graduating from the LDP in March 2013. Doc. 1 at ¶¶ 8, 33. After graduating from the Program, the named plaintiffs and other LDP associates were paid a salary and treated as exempt from overtime pay. Doc. 1 at ¶ 34.

Ketner resigned from his employment with BB&T in August 2013 and Baker resigned in July 2014. Doc. 1 at ¶ 38. After their respective resignations, BB&T informed Ketner and Baker that it intended to enforce the TCA and hired a law firm to collect the balance due from each of the named plaintiffs. Doc. 1 at ¶¶ 38-39. BB&T demanded payment of training costs from Ketner in the amount of $35,982.92 and from Baker in the amount of $27,800. Doc. 1 at ¶¶ 40-41. The plaintiffs allege that BB&T has enforced the TCA and recovered money from other LDP associates, Doc. 1 at ¶¶ 42, 44, but the Complaint contains no allegations that BB&T has taken any further steps to enforce the TCA against either Baker or Ketner. Nor do the plaintiffs allege that they have repaid any of the amounts due under the Agreement. Finally, the Complaint does not allege that BB&T ever deducted any amount from the salaries due the plaintiffs or any other LDP associate, or even threatened to do so, for repayment of training costs or for any other reason.

## QUESTIONS PRESENTED

I. Whether Count II, alleging that BB&T misclassified the plaintiffs as exempt for overtime purposes after they graduated from the LDP program, should be dismissed because the Complaint fails to state a plausible claim that the repayment obligations of the TCA violated the salary basis requirement of the FLSA's overtime exemptions.

II. Whether Count III, alleging violation of the FLSA's minimum wage requirement, should be dismissed because the Complaint fails to state a plausible claim that BB&T violated the minimum wage requirement with respect to Ketner after he graduated from the LDP program.

III. Whether Count IV, seeking a declaratory judgment that the TCA violates the FLSA's overtime and minimum wage provisions, should be dismissed for failure to state a claim upon which relief may be granted.

## ARGUMENT

### Rule 12(b)(6) Standards

Rule 12(b)(6) provides for the dismissal of a claim based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating motions to dismiss, the Court should construe the complaint's factual allegations "in the light most favorable to the plaintiff" and "must accept as true all well-pleaded allegations." *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir. 1994). The Court need not, however, "accept the legal conclusions drawn from the facts," nor "accept as true

unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

Pursuant to Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a)(2) does not require "detailed factual allegations," a complaint must offer more than "naked assertion[s]" and unadorned "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007). Requiring plausibility "does not impose a probability requirement at the pleading stage." *Id.*, 550 U.S. at 556. It does, however, demand more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 662. Ultimately, a claim has facial plausibility when the plaintiff pleads factual content that permits the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 556 U.S. at 663. As described below, the allegations contained in Counts II, III and IV fail to meet this plausibility standard.[1]

---

[1] Civil actions to recover overtime under the FLSA generally must be brought no more than two years after the cause of action accrues. 29 U.S.C. § 255(a). The limitations period is extended to three years only if the plaintiff can show that the violation was "willful," i.e., that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Id.*; *see also McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Even if one or more of these claims survive this motion to dismiss, the plaintiffs have failed to plead specific facts in support of these claims to support their conclusory assertions of "willfulness," particularly in light of the arguments and authority set forth herein. Doc. 1 at ¶¶ 62, 67, 74. Consequently, the statute of limitations for the named plaintiffs should be restricted to the two years preceding the filing of the Complaint, not the three-year limitations period applicable to "willful" violations of the statute. 29 U.S.C. § 255(a); *Orellana v. Cienna Properties, LLC*, 2012 WL 203421, at *3 (D. Md. Jan. 23, 2012).

**I. BB&T's requirement that LDP associates enter into the TCA, thereby agreeing to repay a portion of the Program training costs if they resign from their employment or are terminated for cause within five years, does not violate the salary basis requirements of the FLSA's overtime exemptions.**

In Count II of the Complaint, the plaintiffs allege that BB&T misclassified the named plaintiffs and other similarly situated employees as exempt from the FLSA's overtime and minimum wage requirements after they graduated from the LDP and were placed in various job positions. Doc. 1 at ¶¶ 55-63. The crux of plaintiffs' misclassification claim is that, by requiring new hires entering the LDP program to sign the TCA, BB&T failed to pay the plaintiffs and other LDP associates on a predetermined salary basis after they graduated from the Program, as required by the salary basis test of the FLSA's so-called "white collar" exemptions. Doc. 1 at ¶¶ 57-60; *see also id.* at ¶ 46.[2]

---

[2] The Complaint contains generalized allegations that BB&T "misrepresented" to the plaintiffs and other LDP associates that they were ineligible to receive overtime pay after graduating from the LDP and being placed in positions that did not require them to exercise discretion and independent judgment with respect to matters of significance, but instead, were clerical-type positions subject to heavy supervision. Doc. 1 at ¶ 61. These offhanded contentions, which lack any specificity about the duties performed by the plaintiffs in their respective roles or, for that matter, any of the other LDP associates who, upon graduation, were transferred to different cost centers and placed into numerous different positions throughout BB&T, Doc. 1 at ¶ 31, do not, in and of themselves, plausibly challenge the exempt status of the plaintiffs or the putative class members. *Iqbal*, 556 U.S. at 663. Indeed, these allegations focus on only *one* duty criteria for *one* white collar exemption (see, generally, e.g., 29 C.F.R. §§ 541.100, 541.200, 541.300) and therefore might not even pertain to Baker or Ketner (let along other LDP associates). This is particularly true for Baker, who earned $100,000 annually at BB&T and consequently is subject to a different, more lenient duties analysis as a "highly compensated employee." 29 C.F.R. § 541.601(a), (c).

The primary exemptions from the minimum wage and overtime requirements of the FLSA are commonly-referred to as the "white collar" exemptions.[3] With a few exceptions not applicable to the facts of this case, each of the white collar exemptions requires that "an employee must be compensated on a salary basis at a rate of not less than $455 per week …" 29 C.F.R. § 541.600(a). Subject to certain exceptions, "[a]n employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). The salary basis test is violated (and therefore the exemption is denied) not only when there is an actual impermissible deduction from the employee's salary, but also in certain situations in which employees are covered by a policy that permits, as a practical matter, impermissible deductions. *Auer v. Robbins*, 519 U.S. 452, 461 (1997). This will occur "if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Id.*; *see also Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 627-28 (6th Cir. 2009).

The Complaint alleges that BB&T paid a salary to the plaintiffs and other LDP associates after they graduated from the Program, but subjected them to a policy and practice of requiring them to reimburse BB&T for training costs, on a prorated basis, up

---

[3] Dozens of other exemptions from the minimum wage and/or overtime requirements of the FLSA exist, but the remaining exemptions are unique to specific industries or jobs. *See generally* 29 U.S.C. §§ 207 and 213.

to $46,000. Doc. 1 at ¶¶ 34, 59. According to the plaintiffs, BB&T's policy of requiring reimbursement of the training costs somehow equated to a failure to pay them on a predetermined salary basis, rendering them misclassified as exempt from the time they graduated from the Program until the end of the TCA's five-year repayment period.

The Complaint does not allege that the salaries paid to the plaintiffs or any other LDP associate were subject to reduction at any point during their tenure with BB&T. Instead, the TCA that the plaintiffs signed explained that BB&T would forgive their repayment obligation at the designated rate and that they would owe nothing after completing five years of service. Doc. 1 at ¶¶ 21, 57, Ex. B. The TCA's repayment obligations are triggered only when an LDP associate resigns from BB&T or is terminated for cause during the five-year period. *Id*. The associate is then contractually bound to repay the prorated share of training costs, from whatever source he or she chooses, within thirty (30) days after his or her last day of employment with BB&T. Doc. 1 at Ex. B.

The Department of Labor's regulation simply requires that *salaries* not be subject to reductions for impermissible reasons. 29 C.F.R. § 541.602(a) (emphasis added); *see also Vogel v. American Home Products Corp. Severance Plan*, 122 F.3d 1065 (Table), 1997 WL 577578, at *4 (4th Cir. Sept. 17, 1997). Nowhere does the regulation state that an employee paid on a salary basis may not legitimately be subject to repayment obligations based on a separate, stand-alone contract, such as the TCA. Consistent with this unambiguous language, courts regularly hold that salary reductions refer only to mandatory deductions from an employee's guaranteed salary and routinely reject

3168796.1

9

Case 1:14-cv-00967-LCB-LPA Document 17 Filed 01/12/15 Page 9 of 20

assertions that policies or practices that involve no actual deduction of cash from an employee's salary, like docking an employee's vacation or accrued bank, implicate the salary basis test. *See Vogel*, 1997 WL 577578, at *5 (internal citations omitted); *see also McBride v. Peak Wellness Center, Inc.*, 688 F.3d 698, 704-06 (10th Cir. 2012).

In the case of the named plaintiffs, Ketner and Baker chose not to serve the five years needed to secure complete forgiveness. Despite the repayment obligations, BB&T satisfied the FLSA's requirements by paying the plaintiffs their salaries for their period of employment. Doc. 1 at ¶ 59. Only after Ketner and Baker terminated their employment did BB&T notify them that it intended to enforce the TCA, a legally-binding contract to which the plaintiffs voluntarily and freely entered and from which the plaintiffs fully received the consideration provided by BB&T. Doc. 1 at ¶ 38. At that point, BB&T had already satisfied the salary basis standard under the FLSA, by paying the salary due without reductions, and pursued enforcement of the TCA as a normal creditor—not as an employer—and it became incumbent upon the plaintiffs to come up with the repayment amounts from their own sources. *See Gordon v. City of Oakland*, 627 F.3d 1092, 1095-96 (9th Cir. 2010) (holding that the City's policy of requiring police officers to repay a portion of their training costs if they voluntarily leave their employment before completing five years of service was analogous to a forgivable loan and, after the City met its minimum wage obligations under the FLSA, the City was "free to seek repayment" of the training debt "as an ordinary creditor").

Absent any allegation their salaries as LDP associations were ever subject to reduction, there is no viable basis for the plaintiffs' claim that the TCA repayment

3168796.1

10

Case 1:14-cv-00967-LCB-LPA   Document 17   Filed 01/12/15   Page 10 of 20

obligations violate the FLSA's salary basis test. 29 C.F.R. § 541.602(a). Consequently, the plaintiff's misclassification claim in Count II fails as a matter of law. *Id.*; *see also McBride*, 688 F.3d at 704-06.

II.  **Plaintiff Ketner fails to allege a plausible claim that BB&T's enforcement of the TCA's repayment provisions violates the FLSA's minimum wage requirement.**

Count III of the Complaint contains allegations, made on behalf of Ketner and similarly situated employees, alleging that BB&T's enforcement of the TCA's repayment provisions had the effect of requiring non-exempt employees to work for wages that are lower than the minimum wage required by the TCA. Doc. 1 at ¶ 66. The Complaint allegations further state that the repayment terms of the TCA rendered Ketner's wages "conditionally paid, subject to reductions, and not 'free and clear' as required by the law." *Id.*

The FLSA requires covered employers to pay their non-exempt employees at least the federal minimum hourly wage for all hours worked each workweek. *See* 29 U.S.C. § 206. The Department of Labor's regulations further provide as follows regarding the FLSA's wage payment requirements to non-exempt employees:

> Whether in cash or other facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. …

29 C.F.R. § 531.35.

Ketner does not allege he was paid below the minimum wage for any given workweek during his tenure with BB&T. Rather, the Complaint alleges Ketner was paid an annual salary of $46,000. Doc. 1 at ¶¶ 7, 34. Thus, the only way the Complaint states a viable claim for minimum wage violations is if Ketner was subject to the minimum wage requirements of the FLSA[4] and any repayment of training costs per the TCA constituted a "kick-back" payment as described in section 531.35. This claim fails, as a matter of law, for several reasons.

Most importantly, even if Ketner were eligible for the minimum wage protections of the FLSA, the Complaint contains no allegation that Ketner himself repaid any LDP training costs under the Agreement. Instead, the plaintiffs assert that BB&T merely *attempted* to enforce the TCA by demanding repayment from Ketner of a prorated portion of his training costs totaling $35,982.92. Doc. 1 at ¶ 40 (emphasis added). The only Complaint allegations relating to LDP associates who actually repaid any portion of training costs per the TCA pertain to individuals who are not plaintiffs in the instant lawsuit.[5] Ketner, as the sole plaintiff alleging minimum wage violations, lacks any

---

[4] The white collar exemptions (the salary basis test of which the plaintiffs attack in Count II) operate as an exemption from both minimum wage and overtime obligations. 29 U.S.C. § 213(a)(1). Therefore, Ketner's claim under Count III depends upon a successful Count II. For the reasons stated previously in the section of this brief addressing Count II, Ketner's Count III claim also must fail. In other words, because Ketner's allegation that BB&T misclassified him as exempt from the FLSA's overtime and minimum wage requirements fails as a matter of law, he has no meritorious challenge to his exempt status. As such, Ketner's allegation in Count III, that he was not paid sufficient minimum wage, also fails because he was exempt from those requirements.

[5] Even if these other individuals were parties to this lawsuit and even if they were subject to the minimum wage requirements of the FLSA, Count III still would fail for lack of pleading specificity because the Complaint does not contain any allegations indicating

3168796.1

12

Case 1:14-cv-00967-LCB-LPA   Document 17   Filed 01/12/15   Page 12 of 20

personal interest in representing others in the litigation. As to Ketner, he does not allege (because he cannot) that his compensation was ever reduced *at all*, let alone reduced such that he was paid less than the required minimum wage for all hours worked. Consequently, no justiciable case or controversy exists under Article III of the U.S. Constitution. U.S. Const. art. III, § 2, cl. 1; *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) (jurisdiction of federal courts is limited to resolving the legal rights of litigants in actual controversies, and absent cognizable interest or personal stake in outcome, putative class representative's suit under FLSA subject to dismissal).

Even if a viable controversy existed (which it does not), Ketner's allegations still fail to establish a plausible claim that BB&T violated the FLSA's minimum wage provisions. This is because any amount paid by an LDP associate to BB&T under the TCA constitutes repayment of a voluntarily accepted loan, not a kick-back within the meaning of section 521.35. As described below, the courts that have addressed this same argument in the context of other, nearly identical training reimbursement programs have reached this very conclusion.

The Seventh Circuit reviewed a training reimbursement program similar to the one at issue here in *Heder v. City of Two Rivers, Wisconsin*, 295 F.3d 777 (7th Cir. 2002).

---

that their payments to BB&T had the effect of diminishing their compensation below the minimum wage amount. *See Landers v. Quality Communications, Inc.*, 771 F.3d 638, 644-45, n. 2 (9th Cir. 2014) (to survive a motion to dismiss, a plaintiff asserting a minimum wage violation must allege that there was a specific week in which the employee was entitled to, but denied, minimum wages).

There, the City of Two Rivers entered into a memorandum of agreement with the firefighters' union that the City would pay for the firefighters' paramedic training, but a firefighter must reimburse the City for the costs of the training if he or she left the City's employment before completing three years of service. Heder underwent the training program, but resigned before the three-year period ended. To recoup the training costs, the City withheld all of Heder's pay from his last two pay periods. Heder filed suit under the FLSA, alleging among other things that the City failed to pay him at least the statutory minimum wage amount for the final pay periods. The City counterclaimed for the remainder of training costs due. The Seventh Circuit held that Heder was entitled to be paid at least the statutory minimum wage for the final two pay periods of his employment, but that the City was then free to collect any remaining amounts due under the reimbursement agreement as an ordinary creditor. *Heder*, 295 F.3d at 779, 781-82.

The Ninth Circuit also made the same determination when addressing the potential minimum wage implications of a contractual training cost reimbursement obligation in *Gordon v. City of Oakland*, 627 F.3d 1092 (9th Cir. 2010). The *Gordon* case involved the City of Oakland's policy requiring police officers to repay, pursuant to governing collective bargaining provisions, a portion of their training costs if they voluntarily left the City's employment before completing five years of service. When Gordon was hired, she signed a written conditional offer, which restated the training cost repayment schedule set forth in the collective bargaining agreement. Gordon resigned before completing the contractual five-year term, and the City notified her, on the day of her resignation, that it was entitled to recover a portion of the training costs pursuant to the
3168796.1

conditional offer that Gordon signed. The City deducted part of the amount due from Gordon's final paychecks for her accrued unused vacation and compensatory time off (but not from the compensation for hours worked), and then demanded that Gordon repay the remainder. Citing *Heder* with approval, the Ninth Circuit held that Gordon's reimbursement to the City under the terms of the signed conditional offer was a "repayment of a voluntarily accepted loan" and not a kick-back and, therefore, did not violate the FLSA's minimum wage provisions.[6] *Gordon*, 627 F.3d at 1096. Because the City complied with the FLSA by paying Gordon at least minimum wage during her employment, it was entitled to seek repayment of Gordon's debt "as an ordinary creditor." *Id.*

The Complaint allegations in the instant case demonstrate that the reimbursement provisions of the TCA constitute a voluntary, forgivable loan, just like the repayment agreements in *Heder* and *Gordon*. The Complaint lacks any allegations that BB&T deducted any portion of the amount due from the compensation payable to Ketner. Instead, BB&T satisfied its FLSA obligations by paying Ketner his promised salary, which exceeded minimum wage, and then attempted to collect Ketner's debt as an ordinary creditor. *See Gordon*, 627 F.3d at 1096; *Heder*, 295 F.3d at 779, 781-82.

---

[6] As the Ninth Circuit noted, the California Court of Appeal had previously analyzed the same reimbursement agreement in *City of Oakland v. Hassey*, 163 Cal. App. 4th 1477, 78 Cal. Rptr.3d 621 (2008). The *Hassey* court also determined that the plaintiff's reimbursement of training costs was not a kick-back under section 521.35 and therefore the repayment agreement did not violate the FLSA. *Id.* at 1486-88, 28 Cal. Rptr.3d at 630-32.

In sum, Ketner's minimum wage violation claim should be dismissed for two reasons, either of which would, in and of itself, warrant dismissal. Even if he were eligible for minimum wage protections, Ketner—who does not allege that he was subject to any salary reductions or that he has repaid any of the training costs due under the TCA—cannot establish that a viable controversy exists as to the minimum wage violation claim. Moreover, in accordance with the case law authority cited above, the training cost reimbursement provisions operate as a separate, enforceable contract, which BB&T may enforce without violating the FLSA's minimum wage provisions, and not a kick-back under section 531.35. For each these reasons, the Court should dismiss Count III.

### III. The Court should dismiss the plaintiffs' request for declaratory judgment for failure to state a claim upon which relief may be granted.

In Count IV of the Complaint, the plaintiffs request a declaratory judgment that the repayment provisions of the TCA are unenforceable under the FLSA's minimum wage and overtime requirements. Doc. 1 at ¶¶ 69-74. The plaintiffs allege as follows:

> 70. Plaintiffs and others similarly situated were required, as a condition of employment, to sign the TCA.
>
> 71. Defendant has enforced the TCA against its employees. BB&T has retained a law firm to collect the balance it asserts is due from Plaintiffs under the TCA. The law firm has demanded payment and asserted that it will take legal action to enforce the TCA and seek court costs, interest, and attorney fees. (See Ex. C).
>
> 72. Enforcement of the TCA violates the FLSA to the extent it has the effect of requiring LDP Trainees and/or Graduates to work for wages that violate minimum wage and overtime laws specified in the FLSA.
>
> 73. Defendant has threatened to enforce the TCA against Plaintiffs Ketner and Baker.

Doc. 1 at ¶¶ 71-73.
3168796.1

The plaintiff's claim in Count IV is governed by the Declaratory Judgment Act, which provides in pertinent part:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. …

28 U.S.C. § 2201(a). The Declaratory Judgment Act's "case of actual controversy" requirement is coterminous with Article III's "case or controversy" requirement. *Aetna Life Insu. Co. of Hartford v. Haworth*, 300 U.S. 227, 239-40 (1937). The controversy between the parties must be "definite and concrete, touching on the legal relations of the parties having adverse legal interests," rather than a difference or dispute of a hypothetical or abstract nature. *Id.*, 300 U.S. at 240-41; *see also Gordon v. Zwickler*, 394 U.S. 103, 109 (1969).

As to Count III of the Complaint, no justiciable controversy exists as to Ketner's claim that enforcement of the TCA's repayment provisions violated the FLSA's minimum wage requirements, for the reasons described in section II of this brief. Moreover, the Complaint does not even allege that enforcement of the TCA would result in Baker's compensation being reduced to less than minimum wage. Because no actual controversy exists between the parties, this Court lacks jurisdiction to consider the plaintiff's declaratory judgment action to the extent it seeks a determination that the Agreement violates the FLSA's minimum wage provisions. *See Aetna*, 300 U.S. at 241; *see also Microstrategy Inc. v. Convisser*, 2000 WL 554264, at *3 (E.D. Va. May 2, 2000).

Further, the Declaratory Judgment Act grants a district court broad discretion as to whether to grant declaratory relief, and such relief is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and … when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). As the Fourth Circuit has recognized, "It is well settled that the declaratory remedy should not be invoked merely to try issues or determine the validity of defenses in pending cases." *Id*.

The plaintiffs' declaratory action seeks a determination, in their favor, on the very same issues raised in Counts II and III. As shown in the previous sections of this brief, plaintiffs have failed to state viable causes of action under the FLSA in these counts—the only causes of action pertaining to the TCA—and both of these claims are subject to dismissal under Rule 12(b)(6). Consequently, the plaintiffs' declaratory judgment action, which requests a ruling that is contrary to law, would serve no useful purpose. *See City of Charleston v. Boggess*, 2012 WL 3925879, at *4-5 (S.D. W. Va. Sept. 7, 2012) (dismissing declaratory judgment claim where, based on the governing authority, no legitimate FLSA controversy existed). For all of these reasons, the plaintiffs' request for declaratory judgment should be dismissed.

## **CONCLUSION**

As described herein, the plaintiffs have failed to state claims in Counts II, III and IV upon which relief may be granted by this Court. Accordingly, these claims should be dismissed, with prejudice, pursuant to Rule 12(b)(6).

3168796.1

This the 12th day of January, 2015.

**/s/Jill S. Stricklin**
Jill S. Stricklin
N.C. State Bar No. 20145
CONSTANGY, BROOKS & SMITH, LLP
100 North Cherry Street, Suite 300
Winston-Salem, NC 27101
Telephone: (336) 721-1001
Facsimile: (336) 748-9112
Email: jstricklin@constangy.com


**/s/ Maureen R. Knight**
Maureen R. Knight
VA Bar No. 47053
CONSTANGY, BROOKS & SMITH, LLP
12500 Fair Lakes Circle, Suite 300
Fairfax, VA 22033
Telephone: (571) 522-6100
Facsimile: (571) 522-6101
Email: mknight@constangy.com
*Notice of Special Appearance Forthcoming*

ATTORNEYS FOR DEFENDANT

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this **MEMORANDUM IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>   Robert A. Brinson (bbrinson@rhrlaw.com)
>   Roberson Haworth & Reese, PLLC
>
>   Rachhana T. Srey (srey@nka.com)
>   Brittany B. Skemp (bbachmanskemp@nka.com)
>   Nichols Kaster, PLLP

This the 12th day of January, 2015.

>   **/s/Jill S. Stricklin**
>   Jill S. Stricklin
>   N.C. State Bar No. 20145
>   CONSTANGY, BROOKS & SMITH, LLP
>   100 North Cherry Street, Suite 300
>   Winston-Salem, NC  27101
>   Telephone: (336) 721-1001
>   Facsimile:  (336) 748-9112
>   Email:  jstricklin@constangy.com