## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| R. Andrew Ketner and Stephen Baker, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br>v.<br><br>Branch Banking and Trust Company,<br><br>Defendant | Case No. 1:14-cv-00967-TDS-LPA<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

At this center of this Fair Labor Standards Act ("FLSA") collective action is a contract that Defendant requires new employees—as a condition of their employment and entrance into Defendant's training program—to sign. Defendant has a practice of actually enforcing a "claw back" provision in this contract, requiring employees to kickback money to Defendant if they do not work for the company for at least five years. Defendant's actual practice of making these improper deductions demonstrates that it never intended to pay Plaintiffs or the putative collective class on a "salary basis," as required for them to be "exempt" from the FLSA's protections. Plaintiffs' Complaint sufficiently alleges their overtime misclassification claim based on these impermissible deductions that violate the FLSA's salary basis requirement for exemptions to apply. The minimum wage claim is also sufficiently alleged. Under the FLSA's minimum wage requirements, Plaintiffs and putative collective members who went through and graduated from the training program must have earned their wages unconditionally and

"free and clear" from improper deductions such as the claw back provision.

As demonstrated below, Defendant's motion to dismiss should be denied on Counts II (overtime) and III (minimum wage), as well as Plaintiffs' claim in Count IV seeking declaratory relief from Defendant's pattern and practice of FLSA violations.

<u>FACTS</u>

Defendant Branch Banking and Trust Company ("BB&T") operates a commercial bank which provides financial services to customers. (Compl. ¶ 5). As a prerequisite to employment in certain jobs, job candidates are required to complete a training course known as the Leadership Development Program ("LDP"). (*Id.* ¶¶ 7, 10-16.) While enrolled in this program, LDP Trainees are required to do such things as attend scheduled classes, study for and pass examinations, and participate in training events. (*Id.* ¶ 23.)

Before individuals may enroll in the LDP, they are required to sign a Training Cost Agreement ("TCA"). (*Id.* ¶ 20; ECF No. 1-2.) The TCA contains a "claw back" provision, which allows BB&T to recover payment for what it characterizes as "training costs" incurred during the LDP, if employees terminate their employment within five (5) years. (*Id.*) Regardless of how much time the LDP courses take—whether six to ten months, or something in between, BB&T calculates these "training costs" at $46,000 for each person. (Compl. ¶ 59; ECF No. 1-2.) This amount is equal to the LDP Trainee's yearly salary if she is a recent college graduate. (Compl. ¶ 15.) Under the TCA, the $46,000 "training cost" will be reduced by one-sixtieth (1/60th) for each full month of employment with BB&T. (ECF No. 1-2.) If an employee terminates her employment

within five years, she must pay any remaining balance of the "training costs" within thirty (30) days. (*Id.*)

Plaintiffs Ketner and Baker were hired as Trainees and enrolled in the LDP. (Compl. ¶ 10.) Plaintiff Ketner, a recent college graduate, was placed in the Corporate track and paid a salary of $46,000. (*Id.* ¶ 17.) Baker, who has an MBA, was placed in the Business-Corporate track at a salary of $100,000. (*Id.* ¶ 18.) Plaintiffs and other LDP Trainees were classified as non-exempt employees while in the LDP. Yet they were required to work off the clock and were not paid all of their overtime as required by the FLSA. (*Id.* ¶¶ 26-27.) While still an LDP Trainee, Plaintiff Ketner was assigned to Defendant's Enterprise Vendor Management department and placed in a job called Business Process and Project Improvement Analyst. (*Id.* ¶ 29.) After graduation, Plaintiff Ketner continued to work in that job with no material change in responsibilities. (*Id.* ¶ 32.) After graduation, Plaintiff Baker worked as a Research & Strategy Specialist in the same department. (*Id.* ¶ 33.)[1] After graduation, Plaintiffs and other LDP Graduates were classified as exempt from the FLSA. (*Id.* ¶ 34.) During this time, they performed principally clerical jobs, subject to heavy supervision, did not exercise judgment and discretion on significant matters, and were routinely required to work over 40 hours per week without receiving overtime compensation. (*Id.* ¶¶ 32, 33, 61.)

Both Plaintiffs resigned from BB&T before completing five years of employment.

---

[1] BB&T's standard practice is to assign LDP graduates to positions with similar responsibilities as they had while working as LDP Trainees. (*Id.* ¶ 35.)

(*Id.* ¶ 37.)  After their resignations, BB&T retained a law firm to collect its "training costs."  (*Id.* at ¶ 39.)  The law firm has demanded payment in the amount of $35,982.92 from Ketner, and $27,800.00 from Baker, and asserted that BB&T will take additional legal action to further enforce the TCA.  (*Id.* ¶¶ 39, 40-41; ECF No. 1-3.)  This collection effort is consistent with BB&T's standard practice of enforcing the TCA.  Defendant has demanded and collected payment from at least two other employees who graduated from the LDP—Mr. Thomas Beamon and Ms. Jillian Forbes.  (*Id.* at ¶ 42.)  By enforcing the TCA, BB&T has improperly clawed-back wages earned by LDP Graduates in violation of the FLSA.  (*Id.* ¶¶ 43-46.)

## ARGUMENT

## I.    STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of a plaintiff's complaint. *Papasan v. Allain,* 478 U.S. 265, 283 (1986).   A complaint must allege enough facts to state a claim for relief that is facially plausible.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Facial plausibility means that the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Additionally, in reviewing a motion to dismiss, a district court "must accept as true all of the factual allegations contained in the complaint," viewing those facts in the plaintiff's favor. *Twombly*, 550 U.S. at 572; *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  As shown below, Plaintiffs have satisfied these pleading requirements with respect to each

Count of their Complaint subject to Defendant's motion.[2]

## II. PLAINTIFFS' COMPLAINT SUFFICIENTLY ALLEGES THAT THEY WERE MISCLASSIFIED AS EXEMPT

Generally, employers covered by the FLSA are required to pay minimum wages and overtime wages to all non-exempt employees. 29 U.S.C. §§ 206, 207. However, an employer is absolved from liability from minimum-wage or overtime wage violations if the employee is properly classified as "exempt." 29 U.S.C. § 213. The exemption status of an employee is an affirmative defense, which employers must prove with clear and convincing evidence. *See Desmond v. PNGI Charles Town Gaming, L.L.C.,* 564 F.3d 688, 691 n.3 (4th Cir. 2009); *see also Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 394 n.11 (1960) (finding that the burden of proving a FLSA exemption is on the employer and stating, "We have held that [FLSA] exemptions are to be narrowly

_____

[2] Defendant also claims that the statute of limitations should be restricted to two years, as Plaintiffs have failed to plead specific facts supporting Defendant's conduct was "willful." (Def.'s Mem. at 6 n.1.) The FLSA's limitations period is extended to three years when a plaintiff can show that an employer's violation was "willful," *i.e.*, that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *29* U.S.C. § 255(a). Here, Plaintiffs have alleged that: BB&T supervisors criticized LDP Trainees for working overtime; BB&T supervisors required certain LDP Graduates to complete month-end book closing processes, requiring them to be in the office late hours and on weekends; BB&T maintained a policy, (*i.e.*, the TCA), which had the effect of requiring employees to work for wages below the minimum wage; and that BB&T's conduct was "willful." (*See* Compl. ¶¶ 28, 36, 53, 62, ¶ 66, 67, 77.) These averments satisfy the *Twombly* and *Iqbal* standards. *See Rady v. Alderwoods Grp., Inc.*, 2012 WL 3926392 (W.D. Pa. Sept. 7, 2012) (finding sufficiently alleged allegations that an employers' policy led plaintiff to being undercompensated and her employers' "failure to pay overtime was willful and unlawful"). Moreover, the issue of willfulness is a question of fact for the jury not appropriate for summary disposition. *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 162-63 (4th Cir. 1992).

construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit").

Rather than challenge the sufficiency of Plaintiffs' allegations, the majority of Defendant's arguments seek to improperly reach the merits of its exemption defense. That is, BB&T argues that Plaintiffs have failed to state a claim because they were exempt, rather than non-exempt employees, as they have alleged. But at this initial pleading stage, such a determination is improper. *See Hedrick v. S. States Co-op. Inc.*, 2010 WL 3834631, at *3 (E.D.N.C. Sept. 30, 2010) ("Ordinarily, the existence of an affirmative defense will not support a Rule 12(b)(6) motion, in part, because a plaintiff is not required to negate affirmative defenses in his complaint."); *Sutherland v. SOSi Int'l, Ltd.*, 2007 WL 2332412, at *2 (E.D. Va. Aug. 10, 2007) (denying defendant's motion to dismiss, reasoning that "[t]he applicability of an exemption should not be resolved at the pleading stage"); *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Plaintiffs are only required to make allegations, as they have done, that allow the Court to plausibly infer that Defendant violated the FLSA. Because both of Plaintiffs' misclassification theories—Defendant's violation of the exemptions' "salary basis" test and Defendant's failure to meet the exemptions' job duties test—are sufficiently alleged, Defendant's motion to dismiss Count II is not warranted. (Compl. ¶¶ 55-63).[3]

---

[3] Under the FLSA, employees who perform bona fide professional, administrative, or executive duties ***and*** are paid on a salary basis are classified as "exempt employees" and not subject to the FLSA's overtime and minimum wage requirements. 29 U.S.C. §

A.  **Plaintiffs' Complaint Sufficiently Alleges BB&T's Violation of the Salary Basis Test.**

i.  *BB&T Has an Actual Practice of Making Improper Deductions*

Defendant claims that Plaintiffs have not alleged a viable misclassification claim because they have not alleged that their salaries were ever subject to an improper reduction.  (Def.'s Mem., ECF No. 17 at 10-11.)  Defendant is wrong.

First, Plaintiffs have alleged that they were subject to a reduction because Defendant had an actual practice of enforcing the TCA and that this practice violates the FLSA's salary-basis requirement.  (*Id.* ¶¶ 57-60.)  Under the FLSA, exempt employees "must be compensated on a salary basis at a rate of not less than $455 per week."  29 C.F.R. § 541.600(a); 29 U.S.C. § 213(a).  An employee is paid on a "salary basis"  if he regularly receives "a predetermined amount . . . which is not *subject to reduction* because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a) (emphasis added).  An employee is "not paid on a salary basis if deductions from the employee's predetermined compensation are made . . . by the operating requirements of the business."  *Id.*

Further, when an employer makes improper deductions, it loses the exemption if the facts demonstrate that it did not intend to pay employees on a salary basis.  29 C.F.R. § 541.603(a).  "An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis."  29 C.F.R. § 541.603(a); *see*

213(a)(1); 29 C.F.R. § 541.118; *Shockley v. City of Newport News*, 997 F.2d 18, 21-22 (4th Cir. 1993).

*also Auer v. Robbins,* 519 U.S. 452, 452-53 (1997); *Sharer v. Tandberg, Inc.*, 2007 WL 676220 (E.D. Va. Feb. 27, 2007) (stating that exempt status may be defeated upon a showing that employer has an "actual practice" of making such deductions).

Here, Defendant's actual practice of making improper deductions demonstrates that it did not intend to pay Plaintiffs and the putative class on a salary basis as required by the FLSA's exemptions. In fact, Defendant's actual practice is indisputable in light of the specific language in the TCA itself and in light of the fact that, as the Complaint alleges, Defendant has actually enforced the TCA's claw-back provision against LPD Graduates. (*See* Compl. ¶¶ 42-43.)

The fact that Plaintiffs and other LDP Graduates were paid their salaries during their employment and not required to repay the training costs until after their employment terminated is immaterial as to whether Defendant has an actual practice of making improper deductions and whether Plaintiffs were subject to a reduction based on the quantity of their work. (*See* Def.'s Mem. at 9-10.) Indeed, if timing of the improper deduction mattered, any employer who handed a salaried employee her full paycheck before coercing a "kickback" from the employee on the basis of a separate contract—as opposed to deducting the money from her paycheck in the first instance—could evade the salary basis test. This is why U.S. Department of Labor (DOL) has stated that "it [does] not matter whether an employer implements such a policy by making periodic deductions from employee salaries, or [it] require[s] employees to make out-of-pocket reimbursements from compensation already received." W & H Div., U.S. Dep't of Labor

8

Op. Ltr., 2006 WL 940663, at *2 (Mar. 10, 2006).[4]  "Either approach would result in employees not receiving their predetermined salaries when due on a 'guaranteed' basis or 'free and clear' and would produce impermissible reductions in compensation because of the quality of the worked performed under the terms of the employer's policies, contrary to 29 C.F.R. § 541.602(a)."  *Id.* (concluding that an employee's "signed agreement" accepting such deductions would defeat the exemption"); *see also* W & H Div., U.S. Dep't of Labor, Op. Ltr., 2001 WL 1558760, at *2 (Feb. 20, 2001) (employees "would not qualify for exempt status, *irrespective of* whether deductions are actually taken, or, *if* taken, reduce the [employee's] salary") (emphasis added) (citing *Auer v. Robbins,* 519 U.S. 452, 461(1997)).

Second, the TCA is an impermissible claw-back of salary, not a permissible deduction or a "loan," as Defendant  contends.  Defendant argues that the TCA is a voluntarily-signed loan, and claims that by enforcing the TCA after the LDP Graduates' employment ended, it is merely acting as an ordinary creditor, rather than making an improper deduction from Plaintiffs' and putative class members' salaries.  (Def.'s Mem. at 10) (citing *Gordon v. City of Oakland,* 627 F.3d 1092, 1095-96 (9th Cir. 2010)).  Defendant's argument necessarily requires this Court to improperly reject Plaintiffs'

---

[4] DOL regulations on this issue are entitled to deference.  *Auer*, 519 U.S. 452, 461(1997) ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless 'plainly erroneous or inconsistent with the regulation.'"); *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 293 (4th Cir. 2007) (holding that "the Secretary's interpretation of her own combination-exemption regulation in opinion letters and in her amicus brief to this court is entitled to deference and is 'controlling unless plainly erroneous or inconsistent with the regulation'").

allegations as true, contrary to the standard of review for a motion to dismiss, and determine an issue of fact as to whether the TCA is a loan or an improper deduction. *See Tombey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (a motion to dismiss "does not resolve contests surrounding facts [or] the merits of a claim"). Put another way, BB&T improperly seeks a ruling at this motion to dismiss stage that, as a matter of law, the TCA should be found to be a loan, not an unlawful deduction from Plaintiffs' wages.

Should the Court decide that, at this initial pleading stage, it needs to answer the question of whether the TCA is a *bona fide* loan or an unlawful deduction, it should conclude that the TCA is not a *bona fide* loan because it is not "an advance of money with an absolute promise to repay." *Bankers Mortg. Co. v. CIR*, 142 F.2d 130,101 (5th Cir. 1944); *Capital One Fin. Corp., & Subsidiaries v. C.I.R.*, 659 F.3d 316, 329 (4th Cir. 2011) (citing *In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1277 (8th Cir. 1988) (the "hallmark of a loan" is "an absolute right to repayment of funds advanced")); *see also MoneyForLawsuits V LP v. Rowe*, 2012 WL 1068171, at *13-14 (E.D. Mich. Jan. 23, 2012) *report and recommendation adopted*, 2012 WL 1068760 (E.D. Mich. Mar. 29, 2012) (granting summary judgment, concluding that as a matter of law an agreement that was only payable in the event some contingency occurred, which had no absolute guarantee of repayment, was not a loan).

As the Complaint in this case alleges, there is no absolute obligation to repay the "training costs." (Compl. ¶ 57.) An LDP Graduate who remains with BB&T for five years has absolutely no repayment obligation. The TCA is not a traditional "loan," but

10

instead an improper deduction of Plaintiffs' salary. *See* W & H Div., U.S. Dep't of Labor, Op. Ltr., 2001 WL 1558760, at *1 (rejecting employer's attempt to categorize payments made for internship programs as loans, reasoning that "the payments are, in substance, conditional bonuses, designed to motivate the pharmacists to accept and maintain employment with the company, rather than loans.").

### ii.     *Case law and DOL regulatory guidance support Plaintiffs' claims*

Analogous case law supports Plaintiffs' allegation that the TCA's claw-back provision is an improper deduction. As can be inferred from the allegations in Plaintiffs' Complaint, the TCA acts as a disciplinary policy—penalizing employees based on the quantity of work performed by requiring reimbursement of their wages if they terminate their employment within five years' time. Deductions for various types of disciplinary matters are impermissible. *See Takacs v. Hahn Auto Corp.*, 246 F.3d 776, 780-81 (6th Cir. 2001) (concluding that employers' policy, which suspended employees without pay for disciplinary reasons, violated the salary-basis requirement); *Klem v. Cnty. of Santa Clara, Cal.*, 208 F.3d 1085, 1093 (9th Cir. 2000) (holding that because the defendant's employees were subject to reductions in compensation, they were not paid on a salary basis); *Avery v. City of Talladega*, 24 F.3d 1337, 1341-42 (11th Cir. 1994) (three-day suspension without pay for improper reasons "destroyed" employee's salaried status and entitled employee to overtime); *see also Shockley*, 997 F.2d at 24-25 ("We agree with these holdings and conclude that disciplinary reductions in pay, other than for violations of major safety rules, constitute reductions in pay based on the quantity and quality of an

employee's work.").  This Court should reach the same conclusion.

### iii.    Defendant's Cases are Inapplicable

Defendant's reliance on *Gordon v. City of Oakland*, 627 F.3d. at 1092 (9th Cir. 2010) is misplaced.  In *Gordon*, the city was required by California law to only hire individuals as police officers who had graduated from a police academy run by a third-party.  Id. at 1095 n.5.  The certification obtained from the police academy would qualify graduates to become police officers at other California municipalities, and not just the City of Oakland.  *Id.*

The *Gordon* court did not determine whether the deductions were permissible or impermissible for purposes of the FLSA's salary basis test.  Instead, the case was about minimum wages only.  Additionally, the training at issue in *Gordon* is qualitatively different from this case.  Unlike *Gordon*, the training provided by the LDP is a training program solely for the benefit of BB&T; graduation from the LDP is simply not a credential recognized in the broader marketplace, like a paramedic's certification or a teaching license.  Further, the cost of training in *Gordon* was tied to the actual cost of attending the police academy.  The cost of training was $8,000.  *Id.*  This amount was set by an uninterested third-party—not the same party that stood to benefit by the recovery of these payments.  Here, Defendant has an obvious financial incentive in enforcing the claw back provision in circumstances in which is no correlation between the $46,000 in "training costs" and any actual costs incurred by Defendant.   (Compl. ¶ 59.)

*Gordon* is also inconsistent with the DOL's views concerning whether

Defendant's deductions are impermissible. Indeed, the DOL considered whether an employer's policy requiring pharmacists (who were classified as exempt employees) to re-pay amounts their employer spent towards summer internship programs violated the FLSA's salary-basis requirement. *See* W & H Div., U.S. Dep't of Labor, Op. Ltr., 2001 WL 1558760, *2. The DOL concluded that any recoupment from the pharmacists would result in their salaries being "subject to reduction" in violation of the salary-basis test. *Id.* Thus, the entire class of pharmacists who participated in these programs could not meet the exemption's "salary basis" requirement for all workweeks in which this policy was in effect. *Id.* Similarly here, Defendant's actual practice of enforcing the claw-back provision of the TCA results in LDP Graduates' salaries being "subject to reduction"— violating the salary-basis test for all workweeks in which this policy was in effect.

**B.      Plaintiffs and other LDP Graduates were also misclassified because they performed non-exempt job duties.**

In addition to adequately pleading a violation of the salary-basis test, Plaintiffs have also sufficiently alleged that they were misclassified as exempt based on their primary job duties. (Compl. ¶ 56.) After graduation, non-exempt LDP Trainees transformed into exempt LDP Graduates and were told they were no longer eligible for overtime despite the fact that they performed the exact same job duties that were considered to be non-exempt work just weeks earlier. (*Id.* at 32.) Plaintiffs alleged that their post-graduation job duties were largely clerical and subject to heavy supervision. (*Id.* ¶ 61.) Employees performing similar job duties are routinely found to be non-exempt under the FLSA. *See Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir.

2009) (holding that underwriters in retail banking were not exempt because they had no involvement in determining the future strategy or direction of the business); *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1117 (W.D. Wash. 2011) (concluding that employee's FLSA exemption status could not be resolved at motion to dismiss phase as "a factual examination of plaintiffs' *actual* job duties and *actual* employment circumstances" was required). Plaintiffs have satisfied their pleading requirements with respect to this aspect of their overtime claim.[5]

## III. PLAINTIFFS' MINIMUM WAGE CLAIM IS ADEQUATELY PLEADED

Count III of Plaintiffs' Complaint alleges that BB&T violated the FLSA's minimum wage requirement by enforcing the TCA against Plaintiffs and other similarly situated employees. (Compl. ¶ 66.) Because Defendant's enforcement of the TCA constitutes an unlawful kick-back under the FLSA, Defendant's motion fails.

### A. Plaintiffs have standing to assert a minimum wage claim against BB&T

As a preliminary matter, Defendant's argument regarding Plaintiff Ketner's Article III standing fails because Ketner has suffered a concrete injury and thus has standing to assert a minimum wage claim regardless of whether he alleged that he repaid

---

[5] Defendant argues that Plaintiff Baker, who earned $100,000 annually was a "highly compensated employee" subject to a "more lenient duties analysis." (Def.'s Mem. at 7 n.1.) While the test may be different for this exemption, Plaintiffs have alleged sufficient facts indicating that Plaintiff Baker performed non-exempt job duties, as he had no independent discretion and was heavily supervised. *See* Compl. ¶ 61; *see also Wong v. HSBC Mortg. Corp. (USA)*, 749 F. Supp. 2d 1009, 1017-18 (N.D. Cal. 2010) (holding that plaintiffs, who earned at least $100,000 annually, were not exempt as highly compensated employees absent evidence that they regularly engaged in work requiring the discretion and independent judgment with respect to matters of significance).

14

the training costs under the TCA. (*See* Def.'s Mem. at 12-13.)

Article III standing exists to pursue a claim when a person has suffered an "injury in fact"—the invasion of a legally protected interest that is "(a) concrete and particularized and (b) actual *or imminent*, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (emphasis added); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 n. 12 (4th Cir. 2004) (finding an actual controversy existed where the plaintiff had terminated its agreement with the defendants, received litigation threats from defendants, and separate suits had been filed against the plaintiff); *Cf. Jones v. Sears Roebuck & Co.*, 301 Fed. App'x 276, 282 (4th Cir. 2008) (concluding that because none of the defendants threatened to enforce the arbitration provision, the plaintiff could not show actual or threatened imminent injury to seek declaratory relief that the arbitration provisions were unconscionable). Plaintiff Ketner's financial injury is concrete and further injury is imminent. BB&T has enforced the TCA and began its debt-collection process demanding $35,982.92 from Ketner. (Compl. ¶ 39; *see also* ECF No. 1-3). As shown by the collection letters attached to the Complaint, Defendant's enforcement of the TCA has required both Ketner and Baker to retain counsel to defend against it. (ECF No. 1-3.) If Defendant is successful, it will procure $35,982.92 from Ketner. BB&T has enforced the TCA against several other LDP Graduates, as part of its standard and actual practice of making improper deductions. (*Id.* ¶ 42); *Rhodes v. E.I. Du Pont De Nemours and Co.*, 636 F.3d 88, 99 (4th Cir. 2011) ("Generally, a class representative not only has a 'personal stake' in the

15

substantive claim he or she asserts, but also a distinct procedural right to represent the interests of similarly situated individuals").  Plaintiff Ketner, and the collective class of LDP Trainees and Graduates he seeks to represent, therefore have Article III standing to proceed with this claim.

## B. Enforcement of the TCA violates the FLSA's minimum-wage requirement

Next, Defendant argues that even if Ketner has standing, his allegations fail to establish a plausible claim that Defendant violated the FLSA's minimum wage requirement.  (Def.'s Mem. at 13.)  Defendant is wrong.

The FLSA requires employers to pay their employees no less than the minimum wage.  29 U.S.C. § 206(a)(1)(c).  These wages must be paid finally and unconditionally or "free and clear" of improper deductions, at a rate no lower than $7.25 per hour.  29 C.F.R. § 531.35; *see e.g.*, *Arriaga v. Florida Pac. Farms, LLC*, 305 F.3d 1228, 1241 (11th Cir. 2002); *Gaxiola v. Williams Seafood of Araphoe, Inc.*, 776 F. Supp. 2d 117, 125 (E.D.N.C. 2011).  "The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."  29 C.F.R. § 531.32(c).  As such, "any arrangement that 'tend[s] to shift part of the employer's business expense to the employees… reduc[ing] an employee's wage below the statutory minimum" is strictly prohibited.  *See Ramos-Barrientos v. Bland*, 661 F.3d 587, 594-95 (11th Cir. 2011) (quotation and citation omitted); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892 (9th Cir. 2013) ("To the extent deductions for items not qualifying as 'board,

16

lodging, or other facilities'—such as items primarily benefitting the employer—lower an employee's wages below the minimum wage, they are unlawful."); *Arriaga*, 305 F.3d at 1241 (prohibiting deductions even when employer made non-conventional payroll deductions).

The Complaint alleges that during his employment, Plaintiff Ketner earned an annual salary of $46,000. (Compl. ¶¶ 7, 19.) The Complaint also alleges that Defendant now seeks to claw-back $35,982.92 from Ketner. (*Id.* ¶ 40.) Forcing Ketner to kick back $35,982.92 to Defendant will result in Ketner earning only $10,017.08 for his thirteen months of full-time employment with Defendant. It is therefore more than plausible that Ketner, who has claimed he also worked unpaid overtime hours, was not paid at least $7.25 per hour as the FLSA minimum wage provision requires.[6]

Through discovery, the evidence will show that the training LDP Trainees received was little more than courses explaining BB&T's policies, practices, culture, and internal organization. This training, which was done for Defendant's benefit only, was nothing more than an ordinary business expense, and BB&T's attempt to recoup this ordinary business expense is an improper kickback of its employees' wages. (Compl. ¶

---

[6] Defendant suggests that Plaintiff's minimum wage claim must be dismissed because Ketner has failed to allege there was a specific week in which he was denied minimum wages. (*See* Def.'s Mem. at 12-13 n.5) (citing *Landers v. Quality Comm'cs, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014)). Critically, the Fourth Circuit has not adopted the pleading standard in *Landers*. Courts in the Fourth Circuit apply a much more relaxed pleading standard. *See Sanchez*, 2014 WL 3784109, at *3 (collecting cases in support of determination that plaintiffs sufficiently pled their minimum wage claims where complaint set forth plaintiffs' dates of employment, their job duties, salaries, and that they "were paid below the minimum wage").

17

45.)  To the extent that this kick-back reduces Plaintiffs' wages below the minimum wage, it is illegal.  *See Gaxioloa*, 776 F. Supp. 2d at 127 (finding any deductions taken from employees' pay, whether actual or de facto, which were "incident of and necessary to the employment," could not be deducted if it drove wages below the minimum wage); *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F. Supp. 2d 1295, 1309-10 (N.D. Ga. 2008) (requiring employees to pay for expenses incurred for benefit of employer functions as a de facto wage deduction requiring reimbursement under the FLSA if the deduction drives wages below the minimum wage).[7]  Plaintiffs' Complaint plausibly alleges a minimum wage claim and thus Count III should not be dismissed.

## IV.  PLAINTIFFS' DECLARATORY JUDGMENT CLAIM STANDS

Defendant's request to dismiss Plaintiffs' declaratory judgment count, Count IV, should also be denied.  (Def.'s Mem. at 16.)  Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  Such a declaration has "the force and full effect of a final judgment or decree."  *Id.*  The Declaratory Judgment Act is to be liberally construed to afford a speedy and inexpensive method of adjudicating legal disputes and to settle legal rights. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).  A request for

---

[7] Even Defendant's cases recognize that an employer violates the FLSA by making deductions that reduce wages below the minimum wage.  *See Heder v. City of Two Rivers, Wisc.*, 295 F.3d 777, 779 (7th Cir. 2002); *Gordon*, 627 F.3d at 1095.  This is precisely what Plaintiffs allege.

declaratory judgment should proceed when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Id.*

Plaintiffs seek a declaratory judgment to resolve the uncertainty, insecurity, and controversy surrounding the validity of the TCA. Plaintiffs allege, on behalf of themselves and a class of potentially hundreds of current and former LDP Trainees and Graduates, that the TCA is unenforceable as it mandates illegal deductions and unlawful kickbacks.[8] Many violations have occurred, and others are imminent. Defendant is in the process of taking enforcement action against Ketner and Baker and is likely to take similar enforcement action against others who may leave BB&T before the 5-year condition. A declaratory judgment that the TCA is unenforceable will conclusively resolve such disputes.

Moreover, Plaintiffs' request for a declaratory judgment that the TCA is unenforceable is made on two separate grounds—one of which Defendant completely ignores. Thus, even if this Court were to conclude that there is no plausible minimum wage claim (which it should not), Count IV is still a viable claim based upon Plaintiffs' allegations that the TCA violates the FLSA's salary-basis requirement for "exempt" employees. Count IV of Plaintiffs' Complaint should not be dismissed.

---

[8] This Court has the authority to issue a ruling as to the TCA's enforceability in addition to resolving Plaintiffs' overtime and minimum claims. *See Jacksonville Prof. Fire Fighters Ass'n. v. City of Jacksonville*, 685 F. Supp. 513 (E.D.N.C. 1987) (holding, in response to plaintiffs' request for declaratory judgment, that city violated the FLSA by deducting sleep time from firefighter's hours worked).

## CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss must be denied in its entirety. In the event that Defendant's motion is granted in whole or in part, Plaintiffs respectfully request leave to file an amended complaint.[9]

Dated: February 12, 2015

s/Rachhana T. Srey
Rachhana T. Srey, MN Bar No. 340113*
Brittany B. Skemp, MN Bar No. 0395227*
NICHOLS KASTER, PLLP
4600 IDS Center, 80 South 8th St.
Minneapolis, MN 55402
Telephone: 612-256-3200
Fax: 612-215-6870
srey@nka.com
bbachmanskemp@nka.com
*Admitted *pro hac vice*

Robert A. Brinson, N.C.S.B. #7020
ROBERSON HAWORTH & REESE, P.L.L.C.
300 North Main Street, Suite 300
P.O. Box 1550
High Point, NC 27261
Telephone: (336) 889-8733
Facsimile: (336) 885-1280
bbrinson@rhrlaw.com

ATTORNEYS FOR PLAINTIFFS AND
SIMILARLY SITUATED EMPLOYEES

---

[9] *See* Fed. R. Civ. P. 15(a) ("Leave to amend should be freely given when justice so requires.").

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have verified that such filing was sent electronically using the CM/ECF system to the following:

**Jill Stricklin**
Constangy, Brooks & Smith, LLP

**Maureen Knight**
Constangy, Brooks & Smith, LLP

Dated: February 12, 2015

s/Rachhana T. Srey
Rachhana T. Srey