## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
R. ANDREW KETNER and STEPHEN     )
BAKER, individually and on behalf )
of all other similarly situated   )
individuals,                      )
                                  )
            Plaintiffs,           )
                                  )
      v.                          )     1:14cv967
                                  )
BRANCH BANKING AND TRUST COMPANY, )
                                  )
            Defendant.            )
```

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Defendant's Motion to Amend Answer" (Docket Entry 48) (the "Motion"). For the reasons that follow, the Court will grant in part and deny in part the Motion.[1]

### BACKGROUND

R. Andrew Ketner and Stephen Baker (the "Named Plaintiffs," and collectively with all opt-in plaintiffs, the "Plaintiffs") initiated a putative collective action under the Fair Labor

---

[1] For reasons stated in Deberry v. Davis, No. 1:08cv582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010), the undersigned Magistrate Judge will enter an order, rather than a recommendation, as to the Motion. See also Everett v. Prison Health Servs., 412 F. App'x 604, 605 & n.2 (4th Cir. 2011) (explaining that, where the plaintiff "moved for leave to amend her complaint[] . . . to add a state-law claim of medical malpractice," "the magistrate judge denied [that] motion" and the plaintiff "timely objected, thereby preserving the issue for review by the district court," the district court "could not modify or set aside any portion of the magistrate judge's order unless the magistrate judge's decision was 'clearly erroneous or contrary to law'" (citing 28 U.S.C.A. § 636(b)(1)(A) (2006 & Supp. 2010); Fed. R. Civ. P. 72(a))).

Standards Act (the "FLSA") against their former employer Branch Banking and Trust Company ("BB&T"). (Docket Entry 1 (the "Complaint").) Named Plaintiffs assert three claims for unpaid overtime and minimum wage payments in connection with BB&T's Leadership Development Program (the "LDP") and associated LDP Training Cost Agreement (the "TCA"). (Id. at 9-14 (Counts I-III).)[2] They also seek a declaratory judgment that the "TCA is unenforceable as it violates overtime and minimum wage provisions of the FLSA" (id. at 15). (See id. at 14-15 (Count IV).) Contending that "the plaintiffs failed to state claims upon which relief may be granted under Counts II, III and IV" of the Complaint (Docket Entry 16 at 2), BB&T moved to dismiss those claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"). (Docket Entry 16.) On October 29, 2015, this Court (per United States District Judge Loretta C. Biggs) denied BB&T's dismissal motion. (Docket Entry 31.)

On November 12, 2015, BB&T filed its Answer, which denies the Complaint's allegations of wrongdoing, advances multiple affirmative defenses, and lacks any counterclaims. (Docket Entry 32.) On December 1, 2015, Named Plaintiffs moved for "Conditional Class Certification and Court-Authorized Notice Under 29 U.S.C.

---

[2] Citations herein to Docket Entry pages utilize the document's internal pagination if unified internal pagination exists. In the absence of such pagination, the Docket Entry page citations utilize the CM/ECF footer's pagination.

2

§ 216(b)" (Docket Entry 35 at 1). (Docket Entry 35 (the "Certification Motion").) In the following weeks, Plaintiffs and BB&T attempted to negotiate "a potential compromise on the conditional class certification as well as Court-authorized notice to potential class members" (Docket Entry 41 at 1). (See generally Docket Entry 41 (detailing negotiation efforts); see also Docket Entries 53-1 to 53-7 (counsels' negotiation emails).) Failing to reach such accord, BB&T responded in partial opposition to the Certification Motion on January 8, 2016, contending that it "overreaches in a number of significant respects and should only be granted in part" (Docket Entry 43 at 1).

Meanwhile, BB&T resumed its efforts to enforce the TCA. (See, e.g., Docket Entries 51-1, 51-2 (demand letters to opt-in plaintiffs dated December 8, 2015).) According to Staci Serang, a BB&T employee involved in these enforcement efforts:

> 12. After the instant lawsuit was filed, BB&T temporarily suspended its collection efforts against [Named Plaintiffs], as well as those who opted in to this lawsuit. It also temporarily stopped sending new standardized reminder letters to former LDP associates who left BB&T under circumstances that triggered the repayment obligations. BB&T took these actions while its motion to dismiss the claims related to the TCA were pending before the Court.
>
> 13. After the Court denied BB&T's motion to dismiss, it became clear, based on the Court's ruling, that there would be no early conclusion to this lawsuit related to the TCA.
>
> 14. Accordingly, [Serang] sent the standard reminder letters to former LDP associates who had left BB&T while the motion to dismiss was pending under

3

> circumstances giving rise to repayment obligations under the TCA. . . . The letters were printed on December 8, 2015, and mailed on or about December 10, 2015.
>
> 15. [Serang's] understanding is that, of the thirteen (13) letters sent on December 10, 2015, three of them went to former LDP associates who had already opted in to this lawsuit . . . and the other ten (10) went to individuals who had not opted in. [Serang] understand[s] that, less than a month after these letters were mailed, one of the recipients[] . . . opted into this lawsuit by filing written consent on January 7, 2016.

(Docket Entry 53-10 at 4-5.) In response to this resumption, Plaintiffs' counsel inquired whether BB&T "will agree to voluntarily stop pursuing its collection of LDP training costs while this lawsuit is pending, or [whether Plaintiffs] need to file a motion for preliminary injunction" to stop BB&T's "current TCA collection efforts." (Docket Entry 51-3 at 4.) BB&T refused to cease those efforts, deciding instead to pursue collection through Plaintiffs' FLSA action. (See, e.g., Docket Entry 51-4 at 2 (stating that BB&T "plan[ned] to file a motion to amend the answer to include counterclaims for breach of contract" and "an affirmative defense" for "a set-off in the amount of training costs due under the TCA").)

On January 29, 2016, BB&T filed the Motion, seeking to add counterclaims against the Named Plaintiffs, certain current opt-in plaintiffs, and "any additional opt-in plaintiffs [who] join this lawsuit after this filing who owe BB&T money under a LDP [TCA], who are not up-to-date on their payments under an agreed-upon installment payment schedule, and against whom no lawsuit is

4

pending at the time they opt in" (Docket Entry 48 at 4 n.1). (See id. at 4-5.) The Motion also requests leave to add "[a]n affirmative defense (numbered the Twentieth Defense) stating that, if any of the plaintiffs prevail and are deemed entitled to monetary damages, BB&T should receive a set-off in the amount of training costs due under the LDP [TCA]." (Id. at 4.) Plaintiffs oppose the Motion. (See Docket Entry 50.)

**DISCUSSION**

**I. Amendment Standards**

At this stage of the proceedings, BB&T may amend its Answer "only with the [Plaintiffs'] written consent or the [C]ourt's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 specifies that "[t]he [C]ourt should freely give leave [to amend] when justice so requires." Id. The United States Court of Appeals for the Fourth Circuit has "interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (internal quotation marks omitted); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (explaining that, absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

5

amendment, futility of amendment, etc.[,] the leave sought should, as the [R]ules require, be 'freely given'").

Moreover, although "prejudice resulting to the opponent by a grant of leave to amend is reason sufficient to deny amendment," the "absence of prejudice[] . . . will normally warrant granting leave to amend." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980). In regard to futility, the Fourth Circuit has explained that courts should deny leave to amend only "when the proposed amendment is clearly insufficient or frivolous on its face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986). The Fourth Circuit has further explained that "[f]utility is apparent if the proposed amended [pleading] fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). Accordingly, a proposed amendment fails for futility if it could not survive a Rule 12(b)(6) motion to dismiss. Smith v. Bank of the Carolinas, No. 1:11cv1139, 2012 WL 4848993, at *3 (M.D.N.C. Oct. 11, 2012) (citing United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008)). An affirmative defense remains subject to Rule 12(b)(6) dismissal "where facts sufficient to rule on an affirmative defense are alleged in the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).

## II. Proposed TCA Counterclaims

BB&T seeks to add breach of contract counterclaims against certain Plaintiffs for alleged noncompliance with their TCA. (See Docket Entry 48 at 4-5.) Plaintiffs oppose this addition on the grounds of prejudice and bad faith. (Docket Entry 50 at 11-12.) Specifically, Plaintiffs contend that:

> Defendant's Motion is brought with the sole purpose of chilling participation in this collective-action lawsuit. Plaintiffs in this action will be prejudiced if they fail to timely assert their rights to unpaid wages for fear of these counterclaims. And the timing of Defendant's filing strongly suggests an improper motive that is not in line with the FLSA's purpose. BB&T knew about its counterclaims because its collection efforts were the subject of Plaintiffs' Complaint and this Court's Order denying its Motion to Dismiss. Such an obvious omission from its pleadings shows this is a bad faith litigation tactic intended to unfairly prejudice the collective-notice process.

(Id. at 11.) Plaintiffs maintain that BB&T's request to add counterclaims constitutes a "last-ditch attempt to limit its exposure by narrowing the class through its efforts to chill participation in this collective action." (Id. at 2.) As such, Plaintiffs assert, the Court should deny the requested amendment "or, at the very minimum," stay any such ruling "until the 60-day window to join this case has closed." (Id. at 3.)[3]

---

3 Plaintiffs present their opposition to the Motion in a memorandum entitled "PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO STAY CONSIDERATION OF, AND IN OPPOSITION TO, DEFENDANT'S MOTION TO AMEND ITS ANSWER." (Docket Entry 50 at 1.) Pursuant to this Court's Local Rules, all written motions must "be set out in a separate pleading." M.D.N.C. LR 7.3(a). As Plaintiffs failed to comply with Local Rule 7.3(a), the Court rejects any requested

7

As evidence of bad faith, Plaintiffs emphasize that BB&T brought the Motion during the pendency of Plaintiffs' Certification Motion and after the parties failed to agree on the scope of the conditionally certified class. (Id. at 1-2.) This evidence, however, fails to establish that BB&T acted in bad faith in pursuing its Motion. BB&T changed litigation tactics after Plaintiffs inquired whether BB&T would suspend its independent enforcement measures regarding the TCA. (See Docket Entries 51-3, 51-4.) Plaintiffs' inquiry (and threatened preliminary injunction against such enforcement efforts) presents at least an equally plausible motivation for BB&T's decision to advance its Motion as does Plaintiffs' theory that BB&T seeks to chill participation in this FLSA action through the Motion. Cf. Costello v. University of N.C. at Greensboro, 394 F. Supp. 2d 752, 758 n.3 (M.D.N.C. 2005) (finding bad faith where "[t]he timing, substance, and content of [the p]laintiff's motion to amend taken together with his motion to stay show an effort to amend solely to defeat [the d]efendants' motion to dismiss"). Accordingly, the Court declines to find that BB&T acted in bad faith in bringing the Motion.

As for prejudice, Plaintiffs contend that chilling putative plaintiffs' assertion of their FLSA rights through the threatened counterclaims unduly harms (putative) Plaintiffs and undermines the purposes of the FLSA. (See Docket Entry 50 at 11-12; see also,

---

stay. See M.D.N.C. LR 83.4(a).

e.g., id. at 6 (asserting that "[g]ranting [BB&T's] Motion at this time will greatly prejudice Plaintiffs by chilling participation in this collective-action lawsuit"), 10-11 (asserting that "Plaintiffs will be unfairly prejudiced if these counterclaims are added now, and if the putative class fails to timely assert their wage rights because of them").)[4]  However, the evolution of this litigation has

---

[4] Plaintiffs repeatedly advance a concrete prejudice contention regarding chilling participation. (See, e.g., Docket Entry 50 at 11 ("[BB&T's] Motion is brought with the sole purpose of chilling participation in this collective-action lawsuit. Plaintiffs in this action will be prejudiced if they fail to timely assert their rights to unpaid wages for fear of these counterclaims.").) Plaintiffs also devote five sentences at the end of their counterclaim discussion to a nebulous prejudice contention. (See id. at 12 (asserting that (i) "*Morrisroe v. Goldsboro Milling Company* is instructive here[,] 884 F. Supp. 192, 195-96 (E.D.N.C. 1994)," and citing Morrisroe for the proposition that, (ii) "[t]his Court should similarly ensure that the FLSA's protections and the whole collective action process are not undermined, and deny [BB&T's] request to add a claim for alleged debts against the plaintiffs of this FLSA action").) The case on which Plaintiffs rely involved an attempted counterclaim for housing and food costs, which the court ruled permissible only as "a *credit* against [a back pay] award" rather than through "an independent action by an employer to recover these costs if no back pay has been awarded." Morrisroe, 884 F. Supp. at 195 (emphasis in original); see also id. at 196 (recommending dismissal of counterclaim because, "under any set of facts, [the d]efendants cannot state a claim for recovery for their costs independent of a back pay award to [the p]laintiffs"). The Court understands Plaintiffs' Morrisroe-related prejudice argument as a component of their chilling contention. To the extent, however, that Plaintiffs intend this undeveloped contention as an independent argument that adding BB&T's TCA counterclaims results in undue prejudice because Plaintiffs have raised FLSA claims, the Court declines to find such prejudice in the context of this case, where, in their own words, Plaintiffs "assert[] four claims against their former employer BB&T, three of which center around a contract entitled the 'Training Cost Agreement' ('TCA')." (Docket Entry 50 at 3 (emphasis added).)

mooted Plaintiffs' concern regarding chilling putative plaintiffs' participation.

Shortly after they finished briefing the Motion, BB&T and Plaintiffs stipulated to conditional class certification and court-authorized notice. (See Docket Entry 59; see also Docket Entry 60 (Consent Order Stipulating to Conditional Certification and Court-Authorized Notice Pursuant to the FLSA, 29 U.S.C. § 216(b)).) The court-authorized notices lack any reference to BB&T's proposed counterclaims. (See Docket Entry 60 at 4-8.) Plaintiffs mailed the initial notice on May 16, 2016, and the opt-in period ends on July 15, 2016. (See Docket Entry 63 at 3.) Neither party may engage in any communication with putative plaintiffs that could "undermine or contradict [these] court-approved class notice[s]." Solais v. Vesuvio's II Pizza & Grill, Inc., No. 1:15CV227, 2016 WL 1057038, at *2 (M.D.N.C. Mar. 14, 2016) (internal quotation marks omitted); see also id. at *5 ("direct[ing] all parties and their agents to scrupulously refrain from any communication that . . . may undermine or contradict the forthcoming court-approved class notice" (emphasis and internal quotation marks omitted)). Under these circumstances, Plaintiffs' prejudice contentions no longer apply.

10

Having resolved Plaintiffs' bad faith and prejudice objections,[5] the Court will grant BB&T's request to add its breach of contract counterclaims regarding the TCA.

### III. Proposed Set-Off Defense

BB&T also seeks to add an affirmative defense that reduces any recovery Plaintiffs receive by the "amount of training costs due under the LDP [TCA]." (Docket Entry 48 at 4.) Plaintiffs object to this affirmative defense on the grounds of futility and prejudice, contending that it constitutes an impermissible set-off for an FLSA action. (Docket Entry 50 at 12-14.) In support of their contention, Plaintiffs rely on Brennan v. Heard, 491 F.2d 1 (5th Cir. 1974), abrogated on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988), which prohibited set-offs

---

5   Plaintiffs have not raised any concern about prejudice attributable to addition of counterclaims after issuance of the court-authorized class notices. (See Docket Entry 50 at 11-12; see also id. at 6-11 (maintaining that the Court should delay ruling on BB&T's request to add counterclaims until opt-in period closes).) Plaintiffs also do not contend that the Court should decline to exercise supplemental jurisdiction over BB&T's proposed counterclaims; to the contrary, Plaintiffs (i) state that "three of [their claims in this lawsuit] center around [the TCA]" (Docket Entry 50 at 3) and (ii) emphasize the "obvious" nature of these counterclaims (id. at 11). Finally, Plaintiffs do not contest the viability of the proposed counterclaims in an FLSA action. (Compare Docket Entry 50 at 11-12 (discussing proposed counterclaims under subheading entitled "Defendant's Motion is Prejudicial and Made in Bad Faith" (emphasis omitted)), with id. at 12-14 (discussing proposed affirmative defense under subheading entitled "Defendant's Off-Set Defense is Futile" (emphasis omitted)).)

11

in FLSA actions.  (Docket Entry 50 at 12-13.)  In so ruling, the Heard court explained:

> The FLSA decrees a minimum unconditional payment and the commands of that Act are not to be vitiated by an employer, either acting alone or through the agency of a federal court.  The federal courts were not designated by the FLSA to be either collection agents or arbitrators for an employee's creditors.  Their sole function and duty under the Act is to assure to the employees of a covered company a minimum level of wages.  Arguments and disputations over claims against those wages are foreign to the genesis, history, interpretation, and philosophy of the Act.  The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage and overtime standards.  To clutter these proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the Act.  Set-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions, whether the suit is initiated by individual employees or by the Secretary of Labor.

Heard, 491 F.2d at 4; see also id. at 5 (reversing allowance of "set-offs against the back pay found owing under the wage and overtime provisions of the FLSA").  In response, BB&T maintains that "[t]he Fifth Circuit has long since limited its holding in *Brennan* and clarified that *Brennan* does not establish a bright-line rule against setoffs in FLSA cases.  *See Singer v. Waco*, 324 F.3d 813, n. 9 (5th Cir. 2003).  Rather, *Brennan* stands only for the limited principle that setoffs may not result in sub-minimum wage payments to an employee."  (Docket Entry 53 at 8.)

The Fifth Circuit has explicitly rejected BB&T's proposition, holding that the Singer exception to Heard's bright-line

12

prohibition applies only where an employer prepays its wage obligations. <u>Martin v. PepsiAmericas, Inc.</u>, 628 F.3d 738, 742 (5th Cir. 2010). As the Fifth Circuit explained:

> In *Gagnon* [*v. United Technisource, Inc.*, 607 F.3d 1036 (5th Cir. 2010)], the district court found an FLSA overtime violation and awarded damages to the plaintiff. The defendant-employer counterclaimed and sought a set-off in the amount equal to the damages caused by the plaintiff's breach of contract . . . . The district court did not address the employer's counterclaims, and this court gave them short shrift likewise, holding that 'our precedent suggests that such claims should not be addressed in an FLSA action.'
>
> We specifically addressed the employer's set-off claim in *Gagnon*, despite its semblance to the contract counterclaim, to clarify a reasonable uncertainty over *Singer*'s reach. *Gagnon* distinguished the set-off allowed in *Singer* as one that 'simply acknowledged that the City had *already paid* the bulk of its overtime obligations.' Gagnon (the employee), by contrast, was not paid 'any additional sums that could be characterized as advanced or inappropriate amounts subject to an offset against the overtime owed to him,' and thus, a set-off was inappropriate.
>
> In *Gagnon*, we rejected the employer's argument, which [the defendant] renews here, that *Singer* stands for the proposition that set-offs are allowed in FLSA cases so long as they do not result in sub-minimum wages. Although that reading of *Singer* may have been plausible at one time, *Gagnon* clarified that it was the unique character of the set-offs in *Singer* — that they represented overtime obligations already fulfilled — that allowed for a narrow exception to the bright-line rule spelled out in *Heard*. We continue to look with disfavor on set-offs unless the money being set-off can be considered wages that the employer pre-paid to the plaintiff-employee.

<u>Martin</u>, 628 F.3d at 742 (emphasis in original; citations omitted); <u>see also</u> <u>id.</u> at 743 (concluding that "the district court erred in

13

setting-off the value of [the plaintiff's] severance package against her potential recovery at trial").

BB&T's proposed set-off does not involve prepaid wages, and thus, it does not qualify for the limited Singer set-off exemption. Moreover, BB&T concedes that its proposed affirmative defense does not qualify as an authorized credit or set-off under the FLSA. (See Docket Entry 53 at 8.) Accordingly, BB&T seeks an impermissible set-off through its proposed affirmative defense. See Donovan v. Pointon, 717 F.2d 1320, 1323 (10th Cir. 1983) (affirming denial of the defendant's requests to "set off against any amounts found to be due his employees offsetting sums which [the defendant] claimed were due him by such employees"); Heard, 491 F.2d at 4-5. Accordingly, the Court will deny as futile BB&T's request to add its proposed affirmative defense. See Smith, 2012 WL 4848993, at *3; see also Goodman, 494 F.3d at 464.[6]

---

[6] Even under BB&T's interpretation of Singer (as permitting set-offs that do not reduce the employees' recovery below the statutory minimums), its proposed amendment fails for futility. Here, Plaintiffs seek recovery of allegedly unpaid overtime and minimum wages under the FLSA. Because BB&T's proposed set-off does not involve overpaid wages, its set-off would necessarily reduce Plaintiffs' recovery below the statutory overtime and minimum wage mandates. See, e.g., Perez v. South Fla. Landscape Maint., Inc., No. 13-80620-CIV, 2014 WL 293774, at *3 (S.D. Fla. Jan. 23, 2014) ("Here, [the p]laintiff claims that he was not paid for overtime hours worked. Any set-off applied to a recovery by [the p]laintiff would result in [the p]laintiff failing to receive his 'cash in hand.' Unlike *Singer*, the set-off (and counterclaim) asserted does not involve an overpayment of wages by [the d]efendants to [the p]laintiff, but instead damages allegedly caused by [the p]laintiff by failing to pay for a lawn mower as promised to [the d]efendants. In other words, allowing such a set-off would invariably cause [the

14

## CONCLUSION

The Court finds that BB&T did not act in bad faith in proposing its counterclaims and that Plaintiffs' prejudice concerns regarding those counterclaims are moot. Accordingly, the Court will permit BB&T to add its proposed counterclaims. However, BB&T's requested set-off defense fails for futility; thus, the Court denies BB&T's request to add its proposed affirmative defense.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Amend Answer (Docket Entry 48) is **GRANTED IN PART AND DENIED IN PART** as follows: on or before July 25, 2016, BB&T shall file an Amended Answer substantially in the form of the attachment to the Motion (Docket Entry 48-1) that (i) contains BB&T's breach of contract counterclaim(s) against all relevant Plaintiffs (including all relevant opt-in plaintiffs) and (ii) omits the proposed set-off affirmative defense (id. at 18 ("TWENTIETH DEFENSE")).

**IT IS FURTHER ORDERED** that, on or before August 15, 2016, Plaintiffs shall answer or otherwise respond to such counterclaim(s).

**IT IS FURTHER ORDERED** that, on or before August 15, 2016, the parties must file a status report setting out their joint and/or

---

p]laintiff not to receive the overtime payments to which he was allegedly entitled under the FLSA." (citation omitted)).

respective positions regarding any modifications to the Scheduling Order.[7]

This 27th day of June, 2016.

                              /s/ L. Patrick Auld
                                **L. Patrick Auld**
                        **United States Magistrate Judge**

---

[7] Given the parties' ability to explore the factual matters underlying these proposed counterclaims during discovery to date (see Docket Entry 50 at 10 (acknowledging discovery opportunity)) and the Court's extension of the discovery period to permit discovery regarding any Plaintiffs who join the suit during the opt-in period (see Text Order dated May 26, 2016; see also Docket Entry 63 at 3-4), the Court does not anticipate the necessity of significant modifications to the Scheduling Order.